UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| SUSAN M. LYKES obo, ) | Civil Action No.: 4:20-cv-02529-TER |
| JEM, a minor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | ORDER |
| ) | |
| Kilolo Kijakazi,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, finding Plaintiff, a child, was no longer disabled as of November 1, 2013 and has not become disabled again since that date.[2] The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

**I.  RELEVANT BACKGROUND**

**A.     Procedural History**

Plaintiff had previously been found disabled as of October 14, 2008. (Tr. 103). Plaintiff was later determined to no longer be disabled as of November 1, 2013. Such determination was upheld

---

[1] Kilolo Kijakazi is the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Defendant Andrew Saul who was the Commissioner of Social Security when this action was filed.

[2] Plaintiff is used interchangeably, referring to both the minor child and his mother.

at reconsideration after a Disability Hearing Officer hearing. Plaintiff requested a hearing before an ALJ. Plaintiff's mother appeared at such hearing in August 2017. (Tr. 103). On September 12, 2017, the ALJ found Plaintiff was no longer disabled as of November 1, 2013. (Tr. 118). Plaintiff appealed to the Appeals Council, which on August 1, 2018, remanded to the ALJ due to an incomplete hearing transcript and the ALJ's citation to rescinded SSRs. (Tr. 128). Further, the ALJ was directed to obtain a consultative psychological exam if necessary. (Tr. 128). At a hearing in April 2019, Plaintiff's mother asked for time to get an attorney. (Tr. 66). A hearing was held with an attorney on September 4, 2019. (Tr. 43). On September 17, 2019, another decision finding Plaintiff was no longer disabled as of November 1, 2013 was issued by the ALJ. (Tr. 15). Plaintiff filed a request for review of the ALJ's decision. The Appeals Council denied the request for review on May 7, 2020, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed this action on April 28, 2020. (ECF No. 1).

**B.     Plaintiff's Background and Medical History**

Plaintiff was a school age child on the date of medical improvement and an adolescent on the date of the ALJ's decision. (Tr. 19). Plaintiff had impairments of ADHD, hearing deficits, asthma, spells of an unknown etiology, and behavioral problems. (Tr. 18, 25).

**C.     The ALJ's Decision**

In the decision of September 20, 2019, the ALJ made the following findings of fact and conclusions of law:

1. The most recent favorable medical decision finding that the claimant was disabled is the determination dated October 14, 2008. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairments: attention-deficit hyperactivity disorder; hearing deficits; and behavioral problems. These impairments were found to functionally equal the listings (20 CFR 416.924(d) and 416.926a).

3. Medical improvement occurred as of November 1, 2013 (20 CFR 416.994a(c)).

4. The claimant was born on April 16, 2005. Therefore, he was a school-age child, as of November 1, 2013. The claimant is currently an adolescent (20 CFR 416.926a(g)(2)).

5. Since November 1, 2013, the impairments that the claimant had at the time of the CPD have not functionally equaled the Listings of Impairments (20 CFR 416.994a(b)(2) and 419.926a and SSR 05-03p).

6. Since November 1, 2013, the claimant has had the following severe impairments: attention-deficit hyperactivity disorder; hearing deficits; and behavioral problems; asthma; and spells of an unknown etiology (20 CFR 416.924(c)).

7. Since November 1, 2013, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

8. Since November 1, 2013, the claimant has not had an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).

9. The claimant's disability ended as of November 1, 2013, and the claimant has not become disabled again since that date (20 CFR 416.994a).

## II. DISCUSSION

Plaintiff argues Plaintiff has "marked" limitations in the areas of attending and completing tasks and interacting and relating with others as to the functional domains. Plaintiff argues the ALJ failed to consider the combined effects of Plaintiff's impairments. Defendant argues substantial evidence supports the ALJ's findings.

**A.     LEGAL FRAMEWORK**

To determine if the claimant continues to be disabled as an individual who has not attained the age of 18, the Commissioner follows a three-step evaluation process, unless a more prompt finding that disability continues may be made by skipping steps. 20 C.F.R. 416.994a(b). A claimant will no longer be considered disabled if the Commissioner findst his impairment(s) has medically improved and no longer results in marked and severe functional limitations. A three-step medical improvement review standard (MIRS) sequential evaluation process is used to determine if a claimant continues to be disabled.

At step one, the Commissioner determines whether medical improvement has occurred in the impairment(s) that the claimant had at the time of the most recent medical determination that he was disabled (i.e., the comparison point decision, "CPD"). 20 C.F.R. 416.994a(b)(l). Medical improvement is any decrease in the medical severity of the impairment(s) that was present and documented at the CPD. Although the severity decrease may be of any quantity or degree, minor changes in symptoms, signs or laboratory findings are disregarded. 20 C.F.R. 416.994a(c)). If there has been no medical improvement, then the claimant continues to be disabled, unless an exception to medical improvement applies. If there has been medical improvement, the Commissioner proceeds to step two.

At step two, if the CPD was made on or after January 2, 2001, and was based on an impairment(s) meeting or medically equaling a listing, the Commissioner must determine if the claimant's CPD impairment(s) now meets or <u>medically equals</u> that same listing as it was written at that time. 20 C.F.R. 416.994a(b)(2) and SSR 05-03p. If it does, the claimant's disability continues, unless an exception to medical improvement applies. If it does not, the Commissioner must

determine whether the CPD impairment(s) <u>functionally equals</u> the listings. If the impairment(s) functionally equals the listings, the claimant's disability continues, unless an exception to medical improvement applies. If it does not, the Commissioner proceeds to step three.

If the CPD was made on or after January 2, 2001, and was based on <u>functional</u> equivalence to the listings, the Commissioner considers only whether the CPD impairment(s) now functionally equals the listings. 20 C.F.R. 416.994a(b)(2); SSR 05-03p. If that impairment(s) now functionally equals the listings, the claimant's disability continues, unless an exception to medical improvement applies. If it does not, the Commissioner proceeds to step three.

The exceptions to medical improvement are set out in 20 C.F.R. 416.994a(e), (f). There are two groups of medical exceptions. If one of the exceptions in the first group of exceptions applies, the Commissioner must proceed to the third step of the evaluation process. 20 C.F.R. 416.994a(b)(1)(i). If one of the exceptions in the second group of exceptions applies, the Commissioner may find that the claimant is no longer disabled without a finding that medical improvement has occurred or whether the claimant is currently disabled. 20 CFR 416.994a(b)(1)(ii).

At step three, the Commissioner must determine if the claimant is currently disabled under the rules in 20 C.F.R. 416.924(c), (d), considering all the impairments that the claimant has now, including any not present or not considered at the CPD. 20 C.F.R. 416.994a(b)(3), SSR 05-03p. The Commissioner must determine whether the claimant has a medically determinable "severe" impairment or a combination of impairments that is "severe." For an individual who has not attained the age of 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. If there is no medically determinable severe impairment(s), the claimant is

no longer disabled. 20 C.F.R. 416.994a(b)(3)(i). If the claimant has a severe impairment or combination of impairments, the Commissioner must determine if his impairment(s) meets or medically equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's current impairment(s) meets or medically equals the severity of any listed impairment, disability continues. 20 C.F.R. 416.994a(b)(3)(ii). If not, the Commissioner must determine if the claimant's impairment(s) functionally equals the listings. If the claimant's current impairment(s) functionally equal the listings, disability continues. If not, the claimant's disability has ended. 20 C.F.R. 416.994a(b)(3)(iii).

In determining whether an impairment or combination of impairments functionally equals the listings, the Commissioner assesses the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. In making this assessment, the Commissioner compares how appropriately, effectively, and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments. To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. 416.926a(d).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal

standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**1. Relevant Domains**

Plaintiff argues Plaintiff has "marked" limitations in the areas of attending and completing tasks and interacting and relating with others as to the functional domains.

A child has a "marked" limitation in a domain when his impairment or combination of impairments seriously interferes with his ability to independently initiate, sustain, or complete

activities. 20 C.F.R. 416.926a(e)(2)(I). A "marked" limitation is a limitation that is "more than moderate" but "less than extreme" and may limit only one or several activities or functions. 20 C.F.R. 416.926a(e)(2)(I). A child has an "extreme" limitation in a domain when his impairment or combination of impairments very seriously interferes with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. 416.926a(e)(3)(I). An "extreme" limitation is a limitation that is "more than marked," and "extreme" is the rating given to the worst limitations, although it does not necessarily mean the child experiences a total lack or loss of ability to function. 20 C.F.R. 416.926a(e)(3)(I).

### **"Interacting and Relating With Others" Domain**

With respect to this domain, the Commissioner considers how well the child can initiate and sustain emotional connections with others, develop and use the language of his community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(I). Generally, the child must be able to speak intelligibly and fluently so that others can understand him; participate in verbal turntaking and nonverbal exchanges; consider others' feelings and points of view; follow social rules for interaction and conversation; and respond to others appropriately and meaningfully. *Id.* A child with limitations[3] in this domain may have various kinds of difficulties. For example, the child may not

---

[3] Examples of limited functioning in Interacting and Relating With Others include: (I) inability to reach out to be picked up or held by caregiver; (ii) no close friends or friends are all older or younger than the child; (iii) avoids or withdraws from people the child knows or is overly anxious or fearful of meeting new people or trying new experiences; (iv) difficulty playing games or sports with rules; (v) difficulty communicating with others; e.g., in using verbal and nonverbal skills to express himself, carrying on a conversation, or in asking others for assistance; (vi) difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3).

understand how to: approach other children, initiate and sustain social exchanges, and develop meaningful relationships with others. SSR 09-5p.

> The ALJ further cited the rules regarding school age child and adolescent:
>
> The regulations provide that a school-age child without an impairment should be developing more lasting friendships with children who are of the same age. The child should begin to understand how to work in groups to create projects and solve problems. The child should have an increasing ability to understand another's point of view and to tolerate differences. The child should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand (20 CFR 416.926a(i)(2)(iv)).
>
> The regulations provide that an adolescent without an impairment should be able to initiate and develop friendships with children of the same age and to relate appropriately to other children and adults, both individually and in groups. The child should be able to solve conflicts with peers, family members or adults outside of the family. The child should also recognize that there are different social rules for his friends and for acquaintances or adults. The child should be able to intelligibly express his feelings, ask for assistance, seek information, describe events, and tell stories, in all kinds of environments ( e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people ( e.g., parents, siblings, friends, classmates, teachers, employers, and strangers) (20 CFR 416.926a(i)(2)(v)).

(Tr. 22).

The ALJ cited and relied on substantial evidence that supports the ALJ's findings that Plaintiff had "less than marked" limitations in the domain of Interacting and Relating with Others. (Tr. 22-23). The ALJ considered that multiple non-examining state agency experts determined Plaintiff had a less than marked limitation in this area, citing Exhibits 7F and 12F. (Tr. 22). The ALJ considered that multiple hearing screenings in 2017 showed hearing and speech were within normal limits, with more recent testing showing only minimal limitations, citing Exhibits 20F, 21F, and 28F. (Tr. 22-23). The ALJ reviewed Plaintiff's school records and noted they only showed minor infractions and Plaintiff was able to earn good grades, citing Exhibits 16E and 6F. The ALJ noted

9

there was a brief period of counseling for Plaintiff's anger, depressive thoughts, and emotional issues but was short-lived from August 2014 to January 2015, citing Exhibit 13F. (Tr. 23).

Substantial evidence supports the ALJ's findings that Plaintiff had less than marked limitations in the domain of Interacting and Relating with Others. While the record contains facts in favor of both limitations and a lack of limitations, the commissioner and not the court is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence might permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). The ALJ performed the analysis as required by the applicable guidelines, regulations, and policies, and substantial evidence supports the ALJ's decision.

### **"Attending and Completing Tasks" Domain**

For this domain, the Commissioner considers how well the child is able to focus and maintain his attention and how well he can begin, carry through, and finish activities, as well as the pace at which he can perform activities and the ease with which he can change them. 20 C.F.R. § 416.926a(h). As with the other domains, limitations[4] in this domain are determined based on various age group descriptors. *Id.* § 416.926a(h)(2).

The ALJ further cited the rules regarding school age child and adolescent:

> The regulations provide that a school-age child without an impairment should be able to focus his attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. The child should be able to concentrate on details and not make careless mistakes in

---

[4] Examples of limited functioning in Attending and Completing Tasks include: (i) being easily startled, distracted, or overreactive to sounds, sights, movements, or touch; (ii) slow to focus on, or fail to complete, activities of interest, e.g., games or art projects; (iii) repeatedly sidetracked from activities or frequently interrupt others; (iv) easily frustrated and give up on tasks, including ones the child is capable of completing; and (v) requires extra supervision to keep engaged in an activity. 20 C.F.R. § 416.926a(h)(3).

>his work (beyond what would be expected in other children of the same age who do not have impairments). The child should be able to change activities or routines without distraction, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in group sports, read by himself, and complete family chores. The child should also be able to complete a transition task ( e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation (20 CFR 416.926a(h)(2)(iv)).
>
>The regulations provide that an adolescent without an impairment should be able to pay attention to increasingly longer presentations and discussions, maintain his concentration while reading textbooks, and independently plan and complete long-range academic projects. The child should also be able to organize his materials and to plan his time in order to complete school tasks and assignments. In anticipation of entering the workplace, the child should be able to maintain attention on a task for extended periods of time, and not be unduly distracted by peers or unduly distracting to them in a school or work setting (20 CFR 416.926a(h)(2)(v)).

(Tr. 21).

The ALJ cited and relied on substantial evidence that supports the ALJ's findings that Plaintiff had "less than marked" limitations in the domain of Attending and Completing Tasks. The ALJ credited that multiple non-examining state agency experts found no more than "less than marked" limitations in this domain, citing Exhibits 7F and 12F. (Tr. 21). The ALJ considered that there were extensive primary care notes from Dr. Thomas from May 2013 to May 2015 that showed good control of ADHD symptoms with medication management, citing Exhibits 8F, 9F, and 17F. (Tr. 21). The ALJ also relied on that Dr. Thomas in 2013 before the date of discontinuation opined that although Plaintiff's diagnosis resulted in being obviously inattentive, he had no functional or school related limitation and had age appropriate behavior, language and speech, citing Exhibits 3F and 4F. (Tr. 22). The undersigned has reviewed all of the exhibits cited by the ALJ.

Substantial evidence supports the ALJ's findings that Plaintiff had "less than marked limitations" in both of these domains. The question is not whether the evidence could support a

finding of "marked" limitations, but whether the evidence does support the finding of "less than marked" limitations. Again, while the record contains facts in favor of both limitations and a lack of limitations, the commissioner, not the court, is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence might permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).The standard of review here is not whether conflicting evidence might have resulted in a contrary decision, but it is whether substantial evidence supports the ALJ's decision. The court does not weigh again evidence already weighed by the ALJ. The ALJ considered the evidence and performed the analysis as required by the applicable guidelines, regulations, and policies, and substantial evidence supports the ALJ's decision.

### **Combination**

Plaintiff argues briefly that the ALJ failed to consider Plaintiff's impairments in combination.

When a claimant has more than one impairment, the Commissioner "must consider the combined effect of a claimant's impairments and not fragmentize them." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). (citations omitted). The ALJ is required to "adequately explain his or her evaluation of the combined effects of the impairments." *Id.* This court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Regulations require that an ALJ "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe," in determining the claimant's RFC. 20 C.F.R. § 416.945(e); *see also* SSR 96–8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' ").

It is evident from the ALJ's discussion that the ALJ considered Plaintiff's various multiple ailments. (Tr. 25-32). To the extent Plaintiff states the ALJ considered "hearing loss and neurodevelopmental disorders, however there was no mention of the remaining impairments," the ALJ discussed asthma, pseudoseizures/spells, and possible suicidal ideation. (ECF No. 14 at 5; Tr. 25-32). Further, Plaintiff cannot point to any outcome determinative error as to this issue. The ALJ's discussion and analysis, as a whole, is sufficient to demonstrate that he considered the Plaintiff's impairments in combination and is sufficient for the court to properly review the ALJ's conclusion on this issue. *See Thornsberry v. Astrue*, 2010 WL 146483, *5 (D.S.C. Jan. 12, 2010) and *Brown v. Astrue*, 2012 WL 3716792, *6 (D.S.C. Aug. 28, 2012). The ALJ sufficiently addressed Plaintiff's combined impairments under the *Walker* standard and there is substantial evidence to support the ALJ's decision in this regard.

### III. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social

security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

October 25, 2021
Florence, South Carolina

<u>s/ Thomas E. Rogers, III</u>
Thomas E. Rogers, III
United States Magistrate Judge